# IN THE SUPREME COURT OF TEXAS

═══════════

No. 19-0561

═══════════

IN RE COMMITMENT OF JEFFERY LEE STODDARD

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════

**Argued October 7, 2020**

JUSTICE LEHRMANN delivered the opinion of the Court.

We are asked to clarify the standard governing a factual-sufficiency review in the rare civil case in which the burden of proof is beyond a reasonable doubt. The case before us, involving a defendant's civil commitment under Health and Safety Code chapter 841 on the basis that he is a sexually violent predator ("SVP"), falls into that category. The court of appeals described the standard as requiring it to weigh all the evidence in a neutral light to determine whether the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. Applying that standard, the court of appeals reversed a jury's finding that Jeffery Lee Stoddard is an SVP and remanded the case for a new trial.

Drawing from our precedent governing factual-sufficiency reviews in cases involving an intermediate clear-and-convincing burden of proof, we conclude that the court of appeals applied

an improper standard that allowed the court to substitute its own judgment for that of a reasonable factfinder and incorporated a statutory element that chapter 841's text does not support. We hold that a properly conducted factual-sufficiency review in an SVP case requires the court of appeals to determine whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is an SVP. In so doing, the appellate court may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony, and the court must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true, the evidence is factually insufficient to support the verdict. We reverse the court of appeals' judgment and remand to that court to conduct a factual-sufficiency review under this clarified standard.

## I. Statutory Framework

In 1999, the Legislature enacted the Civil Commitment of Sexually Violent Predators Act ("SVP Act" or "Act"), codified at Texas Health and Safety Code chapter 841. The Act enumerates several legislative findings, including that:

- "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence";

- "the existing involuntary commitment provisions of Subtitle C, Title 7 [the Texas Mental Health Code], are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society"; and

- "treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment under Subtitle C, Title 7."

TEX. HEALTH & SAFETY CODE § 841.001. In accordance with those findings, the Act provides "a civil-commitment procedure for the long-term supervision and treatment of sexually violent predators." *Id.* A "sexually violent predator" is a "repeat sexually violent offender"[1] who "suffers from a behavioral abnormality[2] that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a).

The commitment procedure begins when the Texas Department of Criminal Justice notifies an established multidisciplinary team of the anticipated release date of a person who is serving a sentence for a sexually violent offense and "may be a repeat sexually violent offender." *Id.* § 841.021(a).[3] The team must timely assess whether the person is a repeat sexually violent offender and is likely to commit a sexually violent offense after release, notify the Department of the assessment, and make a recommendation regarding whether to evaluate the person for a

---

[1] As relevant here, a person is a "repeat sexually violent offender" if he "is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses." TEX. HEALTH & SAFETY CODE § 841.003(b). "Sexually violent offense" is defined in the Act to include certain enumerated offenses under the Penal Code, as well as offenses with substantially similar elements under prior state law or the law of other jurisdictions. *Id.* § 841.002(8).

[2] "Behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

[3] The Act places timing restrictions on the required notice and provides requirements relating to the multidisciplinary team's membership and training. *Id.* §§ 841.021(a-1), (c), .022(a), (a-1).

3

behavioral abnormality. *Id.* § 841.022(c). Upon receipt of a recommendation to do so, the Department must timely conduct the behavioral-abnormality assessment by utilizing an expert to examine the person and "make a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate . . . techniques." *Id.* § 841.023(a). If as a result of that assessment the Department "believes that the person suffers from a behavioral abnormality," the Department must timely provide notice and corresponding documentation to the appropriate attorney representing the state. *Id.* § 841.023(b).

Within ninety days of receipt of the Department's referral, the state's attorney "may file . . . a petition alleging that the person is a sexually violent predator and stating facts sufficient to support the allegation." *Id.* § 841.041. The judge must conduct a trial "not later than the 270th day after the date a petition is served on the person" and "not later than the person's sentence discharge date." *Id.* § 841.061(a). The parties are each entitled to demand a jury trial and to "an immediate examination of the person by an expert." *Id.* § 841.061(b)–(c). Other rights guaranteed to the defendant include the right to appear and present evidence at trial, cross-examine witnesses, and review all petitions and reports in the court file. *Id.* § 841.061(d). Based on the trial evidence, the factfinder "shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." *Id.* § 841.062(a). Upon a finding that the person is an SVP, "the judge shall commit the person for treatment and supervision to be coordinated by" the Texas Civil Commitment Office, the designated agency responsible for providing such treatment. *Id.* §§ 841.007, .081(a).[4]

---

[4] The Act goes on to provide a detailed framework governing the treatment and supervision of persons committed under the Act, mandating periodic reviews to evaluate the propriety of continued civil commitment and providing procedures for release on the ground that the person's behavioral abnormality has changed to the extent

4

## II. Factual and Procedural Background

In May 2004, Jeffery Lee Stoddard pled guilty to two counts of aggravated sexual assault of a child and to possession of child pornography. The assault convictions involved Stoddard's engaging in oral sex with a seven-year-old girl ("Alice") and causing the girl's six-year-old brother ("Bobby") to engage in oral sex with her.[5] Stoddard was sentenced to twenty years in prison for each sexual-assault conviction and ten years for the child-pornography conviction, to be served concurrently. He became eligible for parole after serving twelve years of his sentence and was scheduled to be released in September 2017. In late 2016, the State filed a petition alleging Stoddard is an SVP and requesting that he be committed for treatment and supervision pursuant to the SVP Act.[6] In early 2017, six months before the SVP trial, Stoddard entered into a nine-month sex-offender treatment program.

At trial, the jury heard testimony from Stoddard and Dr. Timothy Proctor, a forensic psychologist and licensed sex-offender treatment provider who testified as an expert witness for the State. Dr. Proctor conducted an in-person evaluation of Stoddard and reviewed numerous records regarding his sexual offenses, criminal history, and a previous evaluation conducted by another psychologist, Dr. Varela. As the court of appeals thoroughly discussed, Proctor identified and discussed a number of risk factors that he considered in evaluating whether Stoddard has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

---

that the person is no longer likely to engage in a predatory act of sexual violence. *See id.* §§ 841.082–.124. We need not describe those provisions in detail to resolve the issues presented.

[5] For convenience, we use the same aliases for the children that the court of appeals used.

[6] There appears to be no dispute that the prepetition process—involving a multidisciplinary team's assessment and recommendation, a clinical assessment by the Department utilizing an expert, and notice of that assessment to the state's attorney—was properly followed.

Proctor diagnosed Stoddard with nonexclusive-type pedophilic disorder, meaning he is sexually attracted to male and female children and adults. Proctor testified that pedophilia, or sexual interest in prepubescent children, "is a life-long condition, that is . . . not going to be cured. But the idea is to try to treat it, to help to prevent the person from acting on it." Proctor also found that Stoddard exhibited significant antisocial and psychopathic traits, though he did not diagnose Stoddard with "full-blown antisocial or psychopathic disorders."[7] According to Proctor, Stoddard's pedophilia and antisocial lifestyle were the two most significant risk factors.

Proctor described Stoddard's escalation from noncontact offenses like viewing child pornography to grooming Alice and Bobby (by, for example, viewing pornography with Alice) to abusing Alice and finally to abusing both children by causing them to perform sexual acts on each other. Proctor noted that some of the pornographic images on Stoddard's computer had been there for at least three years, reflecting the "strength" and "persistence" of Stoddard's sexual interest in children. Further, Stoddard lived in the victims' home (in a nonromantic relationship with their mother) for only one month, and Proctor considered it "significant" that the abuse began so quickly after he moved in. Proctor also explained that the lack of a familial relationship between Stoddard and the children indicates a higher risk of reoffending, as does the fact that he offended against multiple victims on multiple occasions and the fact that the abuse included a male victim.[8]

---

[7] Dr. Proctor administered a test to Stoddard called the Psychopathy Checklist Revised ("PCLR"), which uses twenty personality traits to assign a number on a forty-point scale. Proctor scored Stoddard a 27, while a diagnosed psychopath generally scores 30 or higher. Dr. Varela had previously administered the test and scored Stoddard a 25. Proctor agreed that the PCLR is a better indicator of general recidivism than sexual-offense recidivism.

[8] Proctor administered an actuarial test called the Static-99, which produces a score based on ten research-based, objective criteria that are designed to evaluate the risk of reoffending. Stoddard scored a 4, which is "above

6

Another risk factor Proctor discussed was Stoddard's denial and minimization of his offenses, demonstrating a lack of self-awareness. For example, Stoddard admitted to abusing Alice on two occasions, while records indicated Alice alleged it had happened as many as ten or eleven times. Stoddard denied knowing why he did it and testified that he thought she wanted to and was a willing participant. He stated that Alice had watched one of his pornographic videos and told him she "wanted to try that," but he also denied showing her the video. Stoddard denied abusing Bobby at all despite his guilty plea, testifying that he did not force the children to perform sexual acts on each other but "caught them doing it" four or five times. Stoddard opined that "they were groomed and they were taught to do that, but not by me." And he admitted possessing approximately 110 images of child pornography but stated that its presence on his computer was "accidental." He denied being attracted to children but identified "a naked child wanting to have sex with [him]" as a trigger to his reoffending. Proctor opined that, while this risk factor was the "weakest" in terms of evaluating risk of reoffending, it is "something that still has some importance and that I consider."

Proctor also discussed Stoddard's nonsexual criminal history, which demonstrated "criminal versatility" and involved a range of convictions including domestic-violence offenses, vehicle-related offenses, and drug-related offenses. Stoddard testified that he had been arrested ten to twelve times as an adult but had never served prison time until the 2004 convictions. Proctor also referenced a probation violation that further indicated control issues, though Stoddard testified that he had always completed probation successfully.

---

average." Dr. Varela had previously administered the test and scored Proctor a 3. Proctor recognized that the average overall risk of reoffending associated with a score of 4 is 5.5%, though he testified that the test is a "starting point" that does not take all risk factors into account or differentiate the weight to be accorded to any particular factor. Further, the data is not broken down to address recidivism rates among offenders diagnosed with pedophilia.

Other risk factors Proctor discussed include:

- Stoddard had a significant history of substance abuse that concerned Proctor because of the disinhibition associated with drugs and alcohol. However, Stoddard testified that he had last used alcohol in 1994, last used drugs in 1984, and attended Alcoholics Anonymous and Narcotics Anonymous regularly before he went to prison. Proctor did not appear to disagree that Stoddard's substance-abuse problems were under control well before he committed the sexual offenses.

- Stoddard had an unstable relationship history, partially demonstrated by the domestic-violence allegations. Stoddard also had a "spotty, unstable work history," though Proctor agreed that Stoddard had held one job for several years. Proctor described a lack of "planning" on Stoddard's part that contributed to the instability.

- As far as Stoddard's behavior while in prison, Proctor stated that Stoddard had "some issues" but was "far from the worst I've seen." Stoddard had no problems with sexual misconduct while in prison, though Proctor explained that was typical for someone with Stoddard's diagnosis because there are "no children in prison."

- Proctor identified two "protective factors" that indicated a decreased risk of reoffending: Stoddard's age (52 at the time of trial) and his participation in the sex-offender treatment program. However, Proctor also expressed concern with the program's short length and Stoddard's apparent lack of progress, including his continued denial of offending against Bobby.

8

Dr. Proctor ultimately concluded, based on his education, experience, and evaluation of Stoddard, that Stoddard suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

The jury charge provided the statutory definitions of the relevant terms, including "sexually violent predator," "repeat sexually violent offender," "behavioral abnormality," "predatory act," and "sexually violent offense." The jury unanimously found beyond a reasonable doubt that Stoddard is a sexually violent predator. The trial court rendered judgment on the jury's verdict and ordered Stoddard civilly committed under the Act for treatment and supervision by the Civil Commitment Office. Stoddard appealed.

A divided court of appeals reversed and remanded for a new trial, holding that the evidence was legally sufficient but factually insufficient to support the verdict. 601 S.W.3d 879 (Tex. App.—Fort Worth 2019). First addressing the legal-sufficiency challenge, the court rejected Stoddard's argument that Proctor's testimony should have been excluded in its entirety as conclusory or speculative, holding that "Proctor provided evidence-based support for his opinion." *Id.* at 890. The court concluded that, considering the evidence in the light most favorable to the verdict, a rational trier of fact could have found the statutory elements for commitment beyond a reasonable doubt. *Id.* at 890–91.

Turning to Stoddard's factual-sufficiency challenge, the court of appeals described the standard of review as requiring the court to "weigh all of the evidence in a neutral light to determine whether the jury's finding 'is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust,'" "'shock[] the conscience,'" or "'clearly demonstrate[] bias.'" *Id.* at 891 (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.

9

1986)).  The court purported to apply that standard in light of the SVP Act's "require[ment] that Stoddard suffer from a behavioral abnormality that renders him a member of the small group of extremely dangerous sex offenders that require civil commitment because they are likely to engage in future predatory acts of sexual violence."  *Id.* at 892.  The court concluded that permitting the verdict to stand would allow Stoddard's confinement to be extended indefinitely "based upon not much more than the facts related to the underlying crime for which he was convicted," noting that Stoddard's underlying offenses and criminal history "pale in comparison" to a selection of four other SVPs whose commitments had been upheld and do not "establish a pattern of violent offenses."  *Id.* at 893–95.  Viewing Stoddard's criminal history "in light of the weak evidence of other factors considered by Proctor," the court concluded that "it is simply not enough to qualify Stoddard as the type of sex offender whom these civil commitments are constitutionally permitted to restrain."  *Id.* at 895.

One justice dissented, opining that the court's task was to apply the proper standard to "the issue at hand"—whether sufficient evidence supports the jury's finding that Stoddard suffers from a behavioral abnormality that makes him likely to engage in a future predatory act—not whether the evidence shows Stoddard is a "member of a small and dangerous group."  *Id.* at 899 (Gabriel, J., dissenting).  The dissent noted that the SVP Act's legislative findings regarding the existence of a small but dangerous group of sexually violent predators identify why the Legislature deemed the Act necessary but "do not supplement or dilute the more specific requirements laid out in the remainder of the Act, . . . as is reflected in the absence of those findings from the jury charge."  *Id.* at 899–900.  The dissent also took issue with the majority's reliance on factual comparisons to other SVP cases and opined that such comparisons are

10

inappropriate in a factual-sufficiency review, which requires the court to evaluate the jury's finding in light of the evidence in *this* case. *Id.* at 902. And the dissent disagreed with the majority's evaluation of that evidence, concluding that the State did not rely solely on Stoddard's underlying offenses and that the jury reasonably could have credited the evidence "directly addressing Stoddard's predisposition or likelihood to reoffend." *Id.* at 901.

The State petitioned for review, presenting two issues. First, noting that the Court of Criminal Appeals has abolished separate factual-sufficiency reviews in criminal cases, the State asks us to follow suit and do the same in SVP cases. Alternatively, the State argues that the court of appeals improperly conducted its factual-sufficiency review by considering evidence outside the record, creating new elements unsupported by the SVP Act, and substituting its own view of the evidence for that of the jury. We granted the State's petition.[9]

## III. Analysis

The court of appeals' review of the legal sufficiency of the evidence to support the jury's verdict is not at issue. However, we discuss the standards governing legal-sufficiency reviews insofar as they are helpful in articulating the standards governing factual-sufficiency reviews.

### A. Sufficiency Reviews in Civil Cases with Elevated Burden of Proof

A commitment proceeding under the SVP Act is the unusual civil case incorporating the "beyond a reasonable doubt" burden of proof typically reserved for criminal cases. *In re Commitment of Fisher*, 164 S.W.3d 637, 639–41 (Tex. 2005). While we have never evaluated the effect of such a high burden of proof on the standards for conducting evidentiary-sufficiency

---

[9] We have no jurisdiction to conduct a factual-sufficiency review. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). However, we may determine whether the court of appeals adhered to the proper legal standard in conducting such a review. *Id.* Our review of the court's opinion and judgment is limited accordingly.

reviews on appeal, we have clarified those standards with respect to cases involving an intermediate "clear and convincing" burden. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). In doing so, we have recognized that "the burden of proof at trial necessarily affects appellate review of the evidence." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Irrespective of the burden of proof, however, the jury remains "the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *see also C.H.*, 89 S.W.3d at 26. To that end, the standards we have articulated for both legal- and factual-sufficiency reviews of findings that must be proven by clear and convincing evidence "honor not only the elevated burden of proof, but also the deference an appellate court must have for the factfinder's role." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). The distinction between the two types of review "lies in the extent to which disputed evidence contrary to a finding may be considered." *Id.*

A legal-sufficiency review of a finding that must be proven by clear and convincing evidence requires that the court review the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding was true.[10] *J.F.C.*, 96 S.W.3d at 266. The court must "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so" and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* The court may not disregard undisputed facts that do not support the finding. *Id.*

---

[10] Clear and convincing evidence is a "'degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *C.H.*, 89 S.W.3d at 23 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)).

By contrast, a factual-sufficiency review is premised on consideration of the entire record. *Id.* The assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so remains. *Id.* However, rather than "disregard" disputed evidence that a reasonable factfinder could not have credited in favor of the finding, the court must determine whether, in light of the entire record, that evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the finding was true. *Id.*[11] By logical extension, in an SVP case where the burden of proof is beyond a reasonable doubt, the evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. *See id.*; *A.C.*, 560 S.W.3d at 631.

The State's primary argument is that, rather than apply this or any other standard to factual-sufficiency reviews in SVP cases, we should follow the Court of Criminal Appeals' approach and abandon such reviews altogether in favor of a single legal-sufficiency standard. We decline to do so.

The legal-sufficiency standard in criminal cases is consistent with the civil standard: the reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). In *Clewis v. State*, the Court of Criminal Appeals created a factual-sufficiency standard requiring

---

[11] The court must also "detail in its opinion why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding." *J.F.C.*, 96 S.W.3d at 267.

the reviewing court to "view[] all the evidence without the prism of 'in the light most favorable to the prosecution'" and to set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (citation and internal quotation marks omitted).

The Court of Criminal Appeals overruled *Clewis* in 2010, holding that the two sufficiency standards had "become essentially the same" and that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support" the elements of a criminal offense. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The purported difference between the two types of review, the Court explained, is that in a legal-sufficiency review the court must "defer to the jury's credibility and weight determinations" (i.e., view the evidence in the light most favorable to the verdict), while in a factual-sufficiency review the court views the evidence in a "neutral light" and thus need not defer to those determinations. *Id.* at 899–900. Yet, the Court noted, its factual-sufficiency decisions "have always required" the reviewing court "to afford a great amount of deference . . . to a jury's credibility and weight determinations," and its most recent formulation of the standard recognized that jurors remain "the sole judge of a witness's credibility[] and the weight to be given their testimony." *Id.* at 900–02 (citation and internal quotation marks omitted). The Court of Criminal Appeals ultimately concluded that the required deference to jury determinations of weight and credibility "eliminates the viewing the evidence in a 'neutral light' component of a factual-sufficiency standard," rendering it "indistinguishable" from the legal-sufficiency standard. *Id.* at 902.

The State argues that, because a factual-sufficiency review in the civil context similarly requires deference to a jury's credibility and weight determinations, it is similarly indistinguishable from a legal-sufficiency review. *See Golden Eagle Archery*, 116 S.W.3d at 761; *C.H.*, 89 S.W.3d at 25–26 (explaining that the standard governing factual-sufficiency review of findings by clear and convincing evidence "retains the deference an appellate court must have for the factfinder's role"). We disagree. It is true that in both types of review the appellate court may not ignore "undisputed facts that do not support the finding" and must otherwise presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. *See J.F.C.*, 96 S.W.3d at 266. As discussed, however, disputed evidence that a reasonable factfinder could *not* have credited in favor of the finding is treated differently. In a legal-sufficiency review, the court disregards such evidence in determining whether a rational factfinder could find the statutory SVP elements beyond a reasonable doubt. *Id.* In a factual-sufficiency review, the court considers whether that evidence, in light of the entire record, is so significant that the factfinder could not have determined beyond a reasonable doubt that the statutory elements were met. *See id.*

To be sure, this distinction "may be a fine one in some cases." *Id.*; *see also In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied) ("[T]he possibility that the evidence in a particular case will be legally sufficient but factually insufficient essentially decreases as the burden of proof increases."). But it is a distinction we have continued to recognize in our civil jurisprudence, and we see no reason to treat SVP cases differently. Accordingly, we hold that the "right of courts of appeals to review for factual

15

insufficiency" under the standard expressed herein "must continue undisturbed." *Pool*, 715 S.W.2d at 634.

## B. The Court of Appeals' Factual-Sufficiency Review

The verdict to be reviewed in this case is the jury's finding beyond a reasonable doubt that Stoddard is an SVP. To reach that verdict, the jury was required to find that (1) Stoddard is a repeat sexually violent offender and (2) he suffers from a behavioral abnormality (encompassing a "congenital or acquired condition") that makes him likely to engage in a predatory act of sexual violence. It is undisputed that Stoddard is a repeat sexually violent offender as the SVP Act defines that term. Stoddard complains only that the evidence is insufficient to support the beyond-a-reasonable-doubt finding that he suffers from the requisite behavioral abnormality.

The factual-sufficiency standard the court of appeals employed in reviewing that finding does not comport with the standard we have articulated. The court engaged in "weigh[ing] all of the evidence in a neutral light" to determine that the evidence was factually insufficient to support the verdict and thus created a risk of injustice too great to allow the verdict to stand. 601 S.W.3d at 891–92. In doing so, the court of appeals largely failed to apply the required presumption in favor of the jury's determinations as to evidentiary weight and credibility.[12] With respect to Proctor's testimony about the considerations he viewed as most significant in assessing Stoddard's risk of committing predatory acts of sexual violence—Stoddard's pedophilia diagnosis, his exhibition of strong antisocial and psychopathic personality traits, the

---

[12] Other courts of appeals use similar language in describing the factual-sufficiency standard but make clear that the jury may resolve conflicts in the evidence and remains the sole judge of witnesses' credibility and the weight to be given their testimony. *See, e.g.*, *In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *3 (Tex. App.—Dallas Jan. 30, 2019, no pet.).

age of his victims and the fact that he was not related to them, the sex of one of his victims, his possession of extensive child pornography, and his swift escalation to "grooming" the children and then to contact offenses (including both causing Alice to engage in sexual activity with him and causing the children to engage in sexual activity with each other)—the court of appeals deemed the testimony insufficiently persuasive while ignoring the jury's right to determine the requisite weight to be given that testimony.

For example, the court observed that the agreed twenty-year sentence for Stoddard's offenses against Alice and Bobby was "not even close to" the maximum possible sentence for those crimes. *Id.* at 894. The court also noted that Stoddard's criminal history did not include prior sex offenses or "a pattern of violent offenses," though the trial testimony did indicate prior instances of assault and domestic violence.[13] *Id.* at 895. And the court found it significant that Proctor did not diagnose Stoddard as a psychopath. *Id.* at 896. Another risk factor Proctor discussed—Stoddard's denial and minimization of his guilt—was amply supported by the evidence but was described as the "weakest" of the factors Proctor considered. *Id.* at 894. In the court of appeals' view, these observations served to undermine the weight to be accorded Proctor's testimony about Stoddard's risk of committing future predatory acts of sexual violence. *See id.* at 893–96.

But a mere disagreement with the jury as to proper evidentiary weight and credibility cannot be the basis of a reversal on factual-insufficiency grounds. Rather, the court was required to explain why the evidence that the jury *could not reasonably have credited* in favor of the finding was so significant that the jury could not have found beyond a reasonable doubt that

---

[13] Proctor testified that Stoddard had past "convictions" for domestic-violence offenses, while Stoddard testified that he had been "arrested" twice for family-violence assault against his ex-wife.

17

Stoddard suffered from the requisite behavioral abnormality that made him likely to engage in a predatory act of sexual violence.[14]  It did not do so.  Instead, the court appeared to substitute its own judgment for that of the jury by concluding that, although Proctor "provided evidence-based support for his opinion," the evidence the State presented was, in the court's view, "simply not enough."  *Id.* at 890, 895.

The court of appeals compounded that error by focusing its review on whether Stoddard was a "member of the small group of extremely dangerous sex offenders" the SVP Act was enacted to address.  *Id.* at 892 (citing TEX. HEALTH & SAFETY CODE § 841.001).  This "small but extremely dangerous group" language, contained in the Act's legislative findings, is not part of the statute's definition of "sexually violent predator" and was not an element the jury was required to find.  *In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *3 (Tex. App.—Dallas Jan. 30, 2019, no pet.); *see also Golden Eagle Archery*, 116 S.W.3d at 762 ("The starting point [in conducting a factual-sufficiency review] generally is the charge and instructions to the jury.").  The court of appeals insisted that it was not "creating an additional element for the State to prove" by measuring the evidence against this statutory language, yet the court expressly held that the evidence "falls short of establishing that Stoddard belongs in the 'small' category of sex offenders . . . who should have their liberty taken from them indefinitely because of the risk that they are likely to engage in future acts of sexual violence."  601 S.W.3d at 892–93.  It did so by comparing Stoddard to other adjudicated SVPs with predicate offenses and criminal histories that were more sustained and egregious than Stoddard's.  *See id.* at 894.

---

[14] The court did appear to conclude that Proctor's testimony about other risk factors—Stoddard's history of substance abuse, unstable employment history, unstable relationship history, and problems with planning—could not reasonably be credited in favor of the finding.  *See* 601 S.W.3d at 897.  That portion of the court's analysis is in stark contrast to its consideration of Proctor's testimony on the factors he deemed most significant.

The court thereby effectively opined that civil commitment under the SVP Act is reserved for the "worst of the worst" and that Stoddard does not qualify as such. But that is simply not what the Act requires the State to prove. *See Johnson*, 2019 WL 364475, at *3 (noting that the terms "extremely dangerous" and "worst of the worst" do not appear in the statutory definition of sexually violent predator and are not elements the State must prove); *c.f. In re Commitment of Williams*, 539 S.W.3d 429, 438 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that the SVP Act's legislative finding regarding the inappropriateness of traditional treatment modalities was not an element of the State's case).

The court of appeals expressed concern that conducting a factual-sufficiency review without consideration of the SVP Act's application to a "small group" of sex offenders "risks ripping Chapter 841 from its constitutional foundation, thus opening the door to civil commitments of sex offenders based solely on their predicate sex offenses." 601 S.W.3d at 892–93. That concern is unfounded because chapter 841 inherently limits the scope of civil commitment to a limited subset of offenders: those who committed certain enumerated sexually violent offenses, are repeat offenders, and suffer from a behavioral abnormality that makes them likely to engage in a predatory act of sexual violence. In other words, the Act requires evidence of both repeat past sexually violent behavior and a present condition that creates a likelihood of such conduct in the future. A factual-sufficiency review focused on the Act's actual requirements does not threaten its constitutionality. *See Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (upholding an SVP statute with substantially similar elements).

19

## IV. Conclusion

The appellate standard governing a factual-sufficiency review of a finding that a person is a sexually violent predator is whether, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. Further, in reversing for factual insufficiency, the appellate court must detail why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding.

The court of appeals' factual-sufficiency review of the verdict in this case did not comport with that standard. Accordingly, we reverse the court of appeals' judgment and remand the case to that court to consider Stoddard's factual-sufficiency point under the standard announced today.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** December 18, 2020

20